IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PAUL P. BOCCONE,          *

       Plaintiff,                 *

        v.                 *     Civil Action No.: RDB 05-3436

AMERICAN EXPRESS CO., *et al.*,   *

       Defendants.         *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## **MEMORANDUM OPINION**

Plaintiff Paul A. Boccone ("Plaintiff" or "Boccone"), proceeding *pro se*, initiated this claim against American Express Company, American Express TRS, Inc., and American Express Travel Related Services, Inc. ("AETRS") (collectively, "Defendants").[1]  Plaintiff has alleged three separate violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and two state law claims for defamation. Pending before the Court is the Defendants' unopposed Motion for Summary Judgment.  (Paper No. 22.)  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons stated below, the Defendants' Motion for Summary Judgment is GRANTED as to Counts One, Three and Five, and Counts Two and Four are dismissed.

.

---

[1] Berwyn Mortgage, Inc. was originally listed as a Plaintiff, but by Order of this Court on February 6, 2006, was dismissed as a party to this action.  Jay B. Stevelman, listed as the Treasurer of American Express TRS, Inc., was originally named as a Defendant in the instant matter.  The case against him was dismissed without prejudice on July 26, 2006 because of Plaintiff's failure to serve a summons and complaint upon him within 120 days of the filing of the complaint, as required under Local Rule 103.8.a.  (Paper No. 16.)

<u>BACKGROUND</u>

The facts are viewed in a light most favorable to the Plaintiff.  This action arises out of a dispute over charges made to Plaintiff's credit card.  Plaintiff is a Maryland consumer allegedly obligated to pay a debt.  The remaining Defendants are creditor corporations.  Plaintiff brought a five-count complaint grounded in both statutory and common law claims.  Count One alleges Defendants communicated false or misleading statements under 15 U.S.C. § 1692e(8) by listing an alleged debt on Plaintiff's credit report without disclosing that it was disputed.  (*Id.* ¶ 20.)  Plaintiff further contends that the account at issue was listed on his credit report as a charge-off that "was asserted by Defendants on or about May of 2005."  (*Id.* ¶¶ 16, 17.)  Count Two sets forth a similar argument framed in terms of Berwyn Mortgage, Inc.  (*Id.* ¶ 23.)  In Count Three, Plaintiff states a claim for libel based on Defendants' publishing of the alleged debt to three credit repositories.  (*Id.* ¶ 26.)  Count Four asserts the same common law libel claim framed in terms of Berwyn Mortgage, Inc.[2]  (*Id.* ¶ 29.)  Count Five alleges that Defendants violated 15 U.S.C. 1692e(7) when employees of Nationwide Credit, Inc., a company Defendants retained to collect the debt, allegedly used abusive language while communicating with Plaintiff.  (*Id.* ¶ 32.)

The background of this case must be viewed in the only light provided to the Court as the *pro se* Plaintiff has not filed any affidavits or evidence with this Court after having been given the opportunity to do so.  On March 9, 2007, Defendants filed a Motion for Summary Judgment as to all five counts alleged in Plaintiff's Complaint.  (Paper No. 22.)  Defendants' Motion has gone unopposed by Plaintiff despite a letter mailed to him by this Court on March 12, 2007 that

---

[2] As the Plaintiff Berwyn Mortgage, Inc., was terminated as a party by Order of this Court on February 6, 2006 (Paper No. 4.), Counts Two and Four are dismissed by the separate Order that follows.

informed him of his opportunity to file an opposition.[3]   This Court has received Plaintiff's initial

Complaint, accompanied by three exhibits,[4] and no other submissions rasing any issue of

material fact.  Therefore, the only facts available to this Court upon which it can rule are

summarized as follows.

In July 1997, Plaintiff opened a platinum business card with Defendant AETRS.

(Axelrod Decl. ¶ 5.)  Plaintiff authorized America Online ("AOL") to submit monthly charges on

the business card.  (*Id.* ¶ 6.)  Between August 1999 and February 2001, AETRS advanced

payments to AOL on Plaintiff's behalf.  (*Id.* ¶ 8.)  Sometime in December 1999, Plaintiff called

AETRS to inquire about an alleged fraudulent charge to AOL, whereupon AETRS launched an

investigation into the matter.  (*Id.* ¶ 10.)  AETRS determined that Plaintiff's claim was without

merit, in part because of Plaintiff's prior approval of recurring payments.  (*Id.* ¶ 12.)  AETRS's

investigation also revealed that Plaintiff owed AETRS $7,820.51.  (*Id.* ¶ 18.)

---

[3] In the March 12 letter, the Court explained to Plaintiff that "Local Rule 105.2.a. provides 14 days in which to file oppositions to motions, and Rule 6(e) of the Federal Rules of Civil Procedure allows three (3) additional days after service by mail.  Accordingly, you have 17 days from the date of this letter to file any relevant opposing materials."  (Paper No. 23.)  The letter also informed him of what might result if no response was filed: "If you do not file a timely and appropriate written response, or, if such response fails to show by affidavit or statement under penalties of perjury that there is a genuine dispute of material fact, summary judgment may be entered against you, or your case may be dismissed without further notice."  (*Id.*)

[4] Attached to the Complaint were Plaintiff's exhibits 1, 2, and 3, which are reproductions of correspondence between Plaintiff and Americorp Credit Corporation, who is not a party in the instant matter.  Exhibit 3 is a letter dated September 29, 2005 from Americorp informing Plaintiff that Berwyn Mortgage, Inc. did not qualify for broker status because of a failure to meet minimum credit requirements.  Exhibit 2 is a letter dated October 4, 2005 from Plaintiff to Americorp in which he summarily explains that his poor credit score is due to fraudulent charges placed on his account in 2001.  Exhibit 3 is a letter dated October 10, 2005 from Americorp granting Berwyn Mortgage, Inc. broker status.

In early February 2000, Plaintiff requested and received a new card from AETRS.  (*Id.* ¶ 19.)  A new account was not created.  (*Id.* ¶ 20.)  The terms and conditions of Plaintiff's cardmember agreement allow AETRS to provide Plaintiff's card information to any merchant that was previously approved by Plaintiff for recurring billing.  (*Id.* ¶ 21.)  Specifically, the cardmember agreement states as follows:

> If you provide authorization to a merchant to bill Charges on a recurring basis to your Card Account . . . and if a replacement Card has been issued to you . . . then we may provide such merchant with your current Card Account status, account number, and/or expiration date in order to permit the merchant to continue to bill the Recurring Charge to your Card Account until you *notify us and the merchant* that you have withdrawn your authorization.

(Defs.' Ex. 1, Cardmember Agreement at 1) (emphasis added).  Plaintiff never withdrew his recurring payment authorization from either AETRS or AOL and therefore AETRS continued to pay AOL as permitted under the agreement.  (*Id.* ¶¶ 23-26.)  Plaintiff eventually stopped payment on the card and on June 2, 2000 AETRS closed Plaintiff's account and referred it to a collection agency.  (*Id.* ¶ 28.)  The unpaid balance on Plaintiff's account was reported to the credit reporting agencies, Trans Union, Equifax, and Experian.  (*Id.* ¶ 29.)

On December 27, 2005, Plaintiff filed a Complaint against Defendants in this Court. Defendants filed a status report with this Court on December 14, 2006 that indicated no discovery had taken place.  (Paper No. 18.)  On January 5, 2007, Defendants filed a Motion for Extension of Time of Motions Deadline (Paper No. 20), which this Court granted on January 8 (Paper No. 21).  Defendants then filed a Motion for Summary Judgment on March 9, 2007 (Paper No. 22), the matter currently pending before the Court.

<u>STANDARD OF REVIEW</u>

4

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is plainly entitled to judgment in its favor as a matter of law.  Fed. R. Civ. P. Rule 56(c).  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that when considering a motion for summary judgment "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.

In undertaking this inquiry, the Court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).  The nonmoving party, however, must present evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  Rule 56(e) plainly states as follows:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Fed. R. Civ. P. 56(e).  The Supreme Court has explained that the quoted passage was added to

"disapprove a line of cases allowing a party opposing summary judgment to resist a properly

made motion by reference only to its pleadings." *Celotex Corp.,* 477 U.S. at 325.  As previously

noted, Boccone has not presented any evidence apart from the Complaint and three exhibits filed

in this case.  The Court has an affirmative obligation to prevent factually unsupported claims and

defenses from going to trial.  *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting

*Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

DISCUSSION

Defendants have moved for summary judgment on all five counts of the Complaint.  For

the reasons that follow, this Court grants Defendants' Motion as to Count One on the basis that

none of the individual Defendants is a "debt collector" within the meaning of the FDCPA

provisions.  Summary judgment on Count Three is granted because the Fair Credit Reporting Act

preempts Plaintiff's claim.  Summary Judgment on Count Five is granted because any

cognizable claim that might exist under the FDCPA is barred by the applicable one-year statute

of limitations.  While Plaintiff contends in his Complaint that he is the president of Berwyn

Mortgage, Inc., Berwyn Mortgage, Inc was dismissed as a party to this action by Order of this

Court on February 6, 2006. (Paper No. 4.)  Counts Two and Four relating to Berwyn Mortgage,

Inc. are dismissed by the separate Order that follows.

**I. Counts Two and Four**

Plaintiff is the president of Berwyn Mortgage, Inc.  Berwyn Mortgage, Inc. was

dismissed without prejudice as a party to this action on February 6, 2006.  (Paper No. 4.)  Counts

Two and Four of Plaintiff's Complaint sought relief on behalf of Berwyn Mortgage, Inc.

Although defendants have addressed Counts Two and Four in their Motion for Summary

6

Judgment, a decision by the Court is not necessary.  Counts Two and Four are dismissed by the separate Order that follows.

## II. Count One: False or Misleading Information under the FDCPA

### A. Statute of Limitations

There is a one-year statute of limitations under the FDCPA.  *See* 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by this title may be brought . . . within one year from the date on which the violation occurs.").  As this Court has previously noted, the statute of limitations "begins to run when a communication violating the FDCPA is sent."  *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 501 (D. Md. 2004) (citations omitted).  The limitation period begins when the debtor should have known of the violation, even if the debtor may not be actually aware of the violation.  *Id.*  (citation omitted).

In Count One, Plaintiff contends that Defendants listed an alleged debt on his credit report without disclosing that it was disputed.  (Compl. ¶ 20.)  Plaintiff further claims that the account at issue was listed on his credit report as a charge-off that "was asserted by Defendants on or about May of 2005."  (*Id.* ¶¶ 16, 17).  Defendants point out that Plaintiff was aware of the reported debt as early as November 30, 2001.  (Defs.' Mem. Supp. Summ. J. at 11.)   As Defendants correctly note, the FDCPA required Plaintiff to bring suit within one year of the alleged violation.  (Defs.' Mem. Supp. Summ. J. at 12.)  Defendants assert that "Plaintiff[] knew or should have known about the alleged FDCPA violations as early as June 2000 but not later than November 30, 2001, and certainly not [as late as] the May 2005 charge-off date asserted in the Complaint."  (*Id.* (citing *Akalwadi*, 336 F. Supp. 2d at 501-02; (Compl. ¶ 17).)  However, the Defendants read this Court's opinion in *Akalwadi* too narrowly.

*Akalwadi* illustrates that each alleged FDCPA violation commences an independent statute of limitations that begins to run at the time of the violation or when the claimant should have known of the violation, whichever is earlier. *Akalwadi*, 366 F. Supp. 2d at 500-01. For example, in *Akalwadi* the plaintiff received a credit report that inaccurately reflected his indebtedness in October 2000. *Id.* at 501. He filed the complaint over two years after he was aware of the inaccurate October 2000 credit report, so the alleged violation was time-barred. *Id.* By comparison, he also asserted a claim premised on another credit report received in July 2002, which was within the limitations period and therefore not barred. *Id.* Similarly, his claims based on a March 2000 collection letter were barred, while allegations relating to a May 2002 collection letter were not. *Id.* at 501-02. Thus, in *Akalwadi*, this Court found that the applicable time period is triggered at different time points based upon the corresponding date of each letter and report. Stated differently, each of Defendant's alleged violations implicated a separate statute of limitations.

In viewing the evidence in the light most favorable to Boccone, the Complaint may be similarly read to refer to separate FDCPA violations. While Plaintiff refers to other conduct by Defendants, such as sending Plaintiff's account to collection several times (Compl. ¶ 15), Plaintiff's Complaint also focuses on Defendants' May 2005 conduct. (*Id.* ¶ 17.) Plaintiff's December 2005 filing is therefore well within the one-year statute of limitations. Although it appears that Plaintiff was aware of the debt sometime between 1999 and 2001, construing the facts and reasonable inferences therefrom in favor of Plaintiff, Plaintiff may not have known that Defendants placed a charge-off status on his credit report until about May 2005. For example, May 2005 may have been the first time the debt was described and reported as a charge-off as

opposed to past due or some other status.  It is reasonable to read Paragraph 17 to assert an

independent violation taking place in May 2005, analogous to the second violation claimed in

*Akalwadi* based on the later credit report.  In sum, the Court's focus is not on the date of

Plaintiff's knowledge of the underlying debt, but rather on the date of each of Plaintiff's alleged

FDCPA injuries, and Plaintiff's allegation in Count One is that Defendants violated the FDCPA

in May 2005 when Defendants asserted the charge-off status on his credit report.  (Compl. ¶¶ 16,

17.)[5]  Accordingly, Defendants' Motion for Summary Judgment as to Count One of Plaintiff's

Complaint cannot be granted on the basis of statute of limitations.

### B. False or Misleading Information under the FDCPA

Having determined that the statute of limitations does not bar Plaintiff's claim, this Court

addresses Plaintiff's claim for Defendants' alleged false or misleading representations, which 15

U.S.C. § 1692e(8) defines as "[c]ommunicating or threatening to communicate to any person

credit information which is known or which should be known to be false, including the failure to

communicate that a disputed debt is disputed."  Defendants argue that Plaintiff's FDCPA claim

fails as a matter of law.  To establish a violation, Plaintiff must show that there was a debt,

*Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 375 (4th Cir. 2006), and that Defendants

are debt collectors as defined in 15 U.S.C. § 1692a(6).  Although Defendants concede that

---

[5] The exact date of this credit report is unclear, but the Court will infer Plaintiff was referring to a credit report obtained at this time because the Court must view the facts in the light most favorable to the nonmoving party.  This conclusion is supported by Plaintiff's Exhibits 2 and 3 which refer to "the issue surrounding [Plaintiff's] personal credit score" (Ex. 2) and Americorp Credit Corporation's review of his credit requirements.  In fact, Plaintiff filed his Complaint shortly after this review, which suggests that this credit report gave rise to an additional alleged violation beyond the abusive language taking place in November 2001. (Compl. ¶ 32.)  There are no available facts establishing that the debt was reported as a charge-off on prior credit reports or that Plaintiff had prior knowledge of this debt being so reported.

Plaintiff has demonstrated the existence of a debt, Defendants argue that they are not "debt collectors" under the FDCPA.

"A distinction between creditors and debt collectors is fundamental to the FDCPA, which does not regulate creditors' activities at all." *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004). A debt collector's principal business is the collection of debts or is one who regularly collects debts. 15 U.S.C. § 1692a(6). Plaintiffs do not allege any facts or provide any evidence suggesting that Defendants' primary business is the collection of debts or that Defendants regularly collect debts. Instead, Plaintiff expressly characterizes Defendants as persons who offer or extend credit. (Compl. ¶¶ 6-8.) Moreover, Plaintiffs have not asserted that Defendants personally used or directed the use of interstate commerce instrumentalities or the mail to collect the acknowledged debt from Plaintiff in accordance with the statutory definition of debt collector. 15 U.S.C. § 1692a(6). Accordingly, this Court finds Defendants are creditors under 15 U.S.C. § 1692a(4), and not "debt collectors" within the meaning of the FDCPA.

A creditor is ordinarily not subject to the FDCPA. *See Carlson v. Long Island Jewish Med. Ctr.*, 378 F. Supp. 2d 128, 130-31 (E.D.N.Y. 2005) ("Thus, by its terms, the FDCPA limits its reach to those collecting the dues 'of another' and does not restrict the activities of creditors seeking to collect their own."). In fact, section 1692a(6) expressly notes that the term does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C. § 1692a(6)(A); *see also Dorsey v. Morgan*, 760 F. Supp. 509, 513 (D. Md. 1991) ("An employee of a creditor is not a debt collector, regardless of the regularity with which the employee collects or attempts to collect debts, so long as the employee acts in the name of the creditor." (citation omitted)). Several courts have also observed that creditors

collecting debts in their own names and whose primary business is not debt collection are not subject to the FDCPA.  *See, e.g. Aubert v. Amer. Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir. 1998) ("Creditors who collect [debts] in their own name and whose principal business is not debt collection . . . are not subject to the [FDCPA]."); *Marketic v. U.S. Bank Nat. Ass'n*, 436 F. Supp. 2d 842, 854 (N.D. Tex. 2006) (noting that "the statutory exclusion from liability . . . for creditors who attempt to collect debts owed to them while using their own names").  Furthermore, one district court specifically held that American Express is not a debt collector, even where American Express was actively collecting a debt.  *Melendez-Torres v. Amer. Express Corp.*, No. 06-1264, 2007 U.S. Dist. LEXIS 20623 (D. P.R. March 22, 2007).

In sum, Defendants took no collection action themselves, but rather simply referred Plaintiff's account to collection.  Even if Defendants had attempted to collect the debt, they would not be liable under the FDCPA because Defendants are creditors and not debt collectors. Because Plaintiff failed as a matter of law to demonstrate that Defendants fall within the purview of the FDCPA, Defendants Motion for Summary Judgment as to Count One is GRANTED.

## III. Count Three: Defamation

Count Three states a claim for defamation.  Plaintiff alleges that Defendants libeled Plaintiff by publishing a "patently false" debt to at least three credit repositories, thereby damaging Plaintiff's personal and professional reputation.  (Compl. ¶ 26.)  In their Motion for Summary Judgment, Defendants contend that Plaintiff's libel claims should be dismissed because they are 1) preempted by the Fair Credit Reporting Act ("FCRA"), 2) barred by the applicable statute of limitations, and 3) insufficient under the requirements elements under Maryland law.  (Defs.' Mem. Supp. Summ. J. at 12-14.)  As to Defendants' statute of limitations

defense, the Court finds that the statute of limitations argument is without merit for the same reasons discussed earlier.  *See supra* Section II.A.  The Court finds, however, that the Defendants common law libel claim is preempted by the FCRA and that, even if it was not preempted, Plaintiff's claim fails to meet the required elements under Maryland law.

## A. Preemption

Defendants assert that the FCRA expressly grants "furnishers of information to credit reporting agencies . . . a qualified immunity from state law defamation claims" and that Plaintiff has not overcome this burden by demonstrating that the information Defendants provided was both false and furnished with malice or willful intent to injure.  (Defs.' Mem. Supp. Summ. J. at 13.)   The FCRA expressly provides that "no consumer may bring an action or proceedings in the nature of defamation . . . with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer."  15 U.S.C. § 1681h(e).  In addition to the malice or willful intent exception, the FCRA will not preempt Plaintiff's common law defamation claim if Defendants willfully, *id.* § 1681n, or negligently, *id.* § 1681o, failed to comply with any other statutory requirement under the FCRA.

Plaintiff has failed to allege any malice or willful intent to injure him.  Instead, it appears that Defendants investigated the disputed debt and determined it to be valid based on Plaintiff's prior authorization to AOL to charge the account and his subsequent failure to revoke the authorization.  Based on the available record, there is no basis for this Court to find malice or willful intent.  Likewise, Plaintiff has not demonstrated that Defendants willfully or negligently failed to comply with any requirement of the FCRA since Plaintiff did not address this argument

in his Complaint and never responded to the argument when raised by Defendants' Motion for Summary Judgment.  Consequently, Plaintiff's defamation claims are preempted by the FCRA and thus, Defendants' Motion for Summary Judgment as to Count Three is GRANTED.

**B. Plaintiff's Libel Claims**

This Court notes for even if Plaintiff's claim was not preempted, he has not met the elements necessary to recover for common law defamation.  Libel is a branch of the tort of defamation.  *Lake Shore Investors v. Rite Aid Corp.*, 509 A.2d 727, 731 (Md. Ct. Spec. App. 1986).  The plaintiff must establish 1) that the defendant made a defamatory statement to a third person, 2) the falsity of the alleged defamatory statement, 3) that the defendant was legally at fault in making the statement, and 4) that the plaintiff thereby suffered harm.[6]  *Gohari v. Darvish*, 767 A.2d 321, 327 (Md. 2001) (emphasis added).

In *Spengler v. Sears*, 878 A.2d 628 (Md. Ct. Spec. App. 2005), the plaintiff argued that the defendant "reported his delinquencies to the credit agencies, but failed to indicate that he 'disputed' the charges.  As a result of this omission, according to [plaintiff], the reporting was false and constituted defamation."  *Id.* at 640-41.  The defendants "undertook an investigation based on the information" plaintiff provided and "then, having determined that the charges . . . were made by an authorized user, reported the delinquency, in the usual manner of the trade, to

---

[6] Defendants erred in claiming the third element required Plaintiff to show "that AETRS made the statement with malice[.]"  (Defs.' Mem. Supp. Summ. J. 14.  Malice is only required when the claim involves public officials, *see Smith v. Danielczyk*, 928 A.2d 795, 805 (Md. 2007), which of course is not the case here.  Thus, "[w]here, as here, [P]laintiff is neither a 'public official' nor a 'public figure,' the proper standard to be applied is that of negligence and not the strict constitutional standard of actual malice."  *Jenoff v. Hearts Corp.*, 453 F. Supp. 541, 547 (D. Md. 1978).

the credit rating agencies." *Id.* The court concluded that "nothing that [defendant] reported was

false. To the contrary, the reports contained information that was substantially correct." *Id.* The

court in *Spengler* found "nothing in the record that would support the elements of a defamation

cause of action." *Spengler*, 878 A.2d at 641.

The same analysis can be applied in this case. Just as in *Spengler*, Plaintiff has asserted

that despite his account being in dispute, it was listed on his credit report as a charge-off.

(Compl. ¶ 16.) Defendants investigated Plaintiff's dispute regarding the debt and, determining

the debt was valid, maintained their position that the debt was valid and so reported it as such.

Plaintiff has failed to provide any evidence or factual basis for concluding that Defendants made

a defamatory statement to a third party, that the statement was false, or that the plaintiff thereby

suffered harm. Plaintiff also has not alleged that Defendants were legally at fault in making the

statement, particularly in light of the fact that Defendants have asserted they conducted an

investigation and concluded the debt was valid. Plaintiff's Complaint is therefore insufficient to

raise a genuine issue of material fact with respect to the required common law elements. *See

Anderson*, 477 U.S. at 252 (mere existence of a "scintilla' of evidence is insufficient to preclude

summary judgment). Therefore, assuming *arguendo* that his claim was not preempted, the Court

finds that Defendants would nonetheless be entitled to judgment as a matter of law.

## IV. Count Five: False Representation under the FDCPA

As discussed above, there is a one-year statute of limitations under the FDCPA. 15

U.S.C. § 1692k(d). Plaintiff's primary FDCPA claim under Count Five is based on the actions of

Nationwide Credit, Inc. that took place in November 2001. Plaintiff's Complaint was filed far

too late because the alleged FDCPA violation occurred four years prior to filing. As to Count

Five, therefore, Defendants' Motion for Summary Judgment is GRANTED.

CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is GRANTED as to Counts One, Three and Five, and Counts Two and Four are dismissed..  A separate Order follows.

Dated:    October 4, 2007

/s/_____
Richard D. Bennett
United States District Judge